UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STANLEY B. GERSHON, | No. ED CV 04-707-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 18, 2004, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on December 16, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 26, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on August 13, 1957. [Administrative Record ("AR") at 104.] He has an eleventh grade education, and has obtained his GED. [AR at 58.] Plaintiff was previously employed as a warehouse worker. [AR at 60-61, 112.]

On October 12, 2000, plaintiff protectively filed an application for Supplemental Security Income payments, in which he alleged that he has been unable to work since October 19, 1999, due to back and leg problems. [AR at 102, 104-06, 110-19.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 22, 2002, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 44-80.] A medical expert and a vocational expert also testified. On October 7, 2002, the ALJ determined that plaintiff was not disabled because he retains the ability to perform light work activity.[1] [AR at 10-21.] When the Appeals Council denied review on September 11, 2003, the ALJ's decision became the final decision of the Commissioner. [AR at 3-6.]

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability. [AR at 20.] At step two, the ALJ concluded that plaintiff has the following severe impairments: back pain; right arm pain; and an infection in his right lung, left hand and shoulder. [AR at 18.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR at 20.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform light work with certain restrictions.[3] [Id.] At step four, the ALJ determined that plaintiff is unable to perform his past relevant work. [Id.] At step five, the ALJ concluded that based on plaintiff's residual functional capacity, there are a significant number of jobs in the national economy that he can perform. [Id.] Accordingly, the ALJ found plaintiff not disabled. [AR at 21.]

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[3] The ALJ found that plaintiff can occasionally bend, crawl, stoop, climb, and kneel, and "reach right shoulder height and frequently reach below shoulder height." [AR at 20.] He cannot work at unprotected heights, and can never climb ladders, ropes, or scaffolds. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) improperly assessed his credibility; (2) erred at step two of the sequential analysis by failing to find his obesity a severe impairment; and (3) failed to give proper weight to the opinions of his treating physicians. Joint Stipulation ("Joint Stip.") at 3. The Court agrees that the ALJ erred in assessing plaintiff's credibility, and remands the matter for further proceedings.

The ALJ determined that plaintiff has the following medically determinable impairments: back pain; right arm pain; and an infection in his right lung, left hand and shoulder. [AR at 18.] The ALJ went on to consider plaintiff's allegations of "severe, unremitting pain," and found them to be "excessive and not fully credible." [Id.] Plaintiff asserts that the ALJ made an improper assessment of his credibility by "gloss[ing] over any inquiry into daily activities," and failing to address certain symptoms such as shortness of breath, cramps, blurry vision, chest pains, and extreme fatigue. Joint Stip. at 7.

During the hearing, plaintiff testified that he can only sit for short intervals due to pain in his back and leg cramps. [AR at 68-69.] According to plaintiff's estimate, he can stand for a total of ten to fifteen minutes, sit for two hours, and walk half a block before needing to rest due to pain. [AR at 71-72.] He also complained of fatigue, and stated that he lies down for approximately ten hours a day. [AR at 73-74.] He no longer drives due to occasional blurred vision and chest problems. [AR at 65.] For meals, he either prepares simple dinners for himself (i.e., sandwiches), his son brings him food, or he goes to his son's grandmother's house. [AR at 63-64.] He watches television, but can only sit "for a minute" before he "get[s] on the floor or on the couch[] ... to keep from getting ... cramps in [his] legs." [AR at 64, 70.] He also attends church "sometimes," but does not go when he feels that he would not be capable of sitting for the duration of the service.[4] [AR at 64.]

---

[4] According to the hearing transcript, plaintiff initially stated that he goes to church "every night," but then clarified that he only attends "sometimes" due to his alleged physical impairments. [AR at 64.]

5

Because plaintiff produced medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are therefore not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As there is no evidence of malingering, the ALJ's reasons for rejecting plaintiff's credibility needed to be clear and convincing to withstand reversal or remand. Benton, 331 F.3d at 1040. As explained below, the Court concludes that the ALJ erred by offering reasons that failed to meet this standard.

The ALJ dismissed plaintiff's complaints of pain as lacking credibility, yet failed to make specific detailed findings and to connect those findings to the rejection of his testimony as required by Ninth Circuit law. See Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th Cir.1989) (ALJ

must convincingly support rejection of claimant's excess pain testimony with specific findings). For example, the ALJ relied in part on the fact that plaintiff "showers, eats and watches television" and "occasionally goes to church" to discredit his allegations of pain. [AR at 17.] In general, if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent [him] from working." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Engaging in some chores or activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). Rather, an ability to take part in some household tasks bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations. See Reddick, 157 F.3d at 722. The Ninth Circuit has held that the ALJ may reject a claimant's symptom testimony if he "is able to spend a substantial part of [his] day performing household chores or other activities that are transferable to a work setting." Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

The Court is not persuaded that plaintiff's ability to eat, shower, watch television, and occasionally attend church, undermines his subjective complaints as these rather minimal activities do not appear to be strongly related to the rigors of the typical work setting. See Fair, 885 F.2d at 603 (certain activities "are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest..."). The ALJ failed to explain how activities such as preparing simple meals or taking showers negate plaintiff's subjective allegations. Nor were the totality of plaintiff's statements regarding his television watching and church attendance taken into account, as the ALJ did not expressly address, let alone reject, plaintiff's testimony describing his need to constantly shift positions while watching television, and that he only attends church when he feels physically able to sit through the duration of the service. Overall, the ALJ made no finding that plaintiff spends "a substantial part"

1  of his day performing household or other activities, and provided no explanation as to how
2  plaintiff's testimony regarding his low level of activity is "inconsistent with [his] claimed
3  limitation[s]." See id. In any event, plaintiff should not be penalized for attempting to continue
4  some normal practices. See Reddick, 157 F.3d at 722 (disability plaintiffs should not be penalized
5  for attempting to lead normal lives despite their limitations). As such, plaintiff's activities as
6  described by the ALJ do not constitute clear and convincing reasons for rejecting his credibility.

7        The ALJ further relied on the results of the orthopedic evaluation conducted by the
8  consultative examiner, Dr. Anh-Tat Hoang, to discredit plaintiff's complaints of pain. [AR at 17,
9  170-75.] In particular, the ALJ pointed out that plaintiff's neurological examination was normal, that
10 plaintiff refused to perform the range of motion tests for the lumbar spine and shoulders, and that
11 Dr. Hoang opined that plaintiff was able to perform medium work. [Id.] Considering each of these
12 factors in turn, the Court is not persuaded that they constitute legally sufficient reasons justifying
13 the rejection of plaintiff's testimony. For example, the neurological exam results show that
14 plaintiff's motor strength was intact, his sensation was well preserved, and his reflexes were
15 "physiologic throughout." [AR at 174.] While these results may be pertinent, the ALJ fails to clarify
16 with any specificity how they negate plaintiff's complaints of pain or other symptoms. Regarding
17 plaintiff's refusal to take part in two range of motion tests, there is nothing in Dr. Hoang's report
18 indicating that plaintiff's refusal was evidence of malingering. In fact, Dr. Hoang offered no
19 explanation as to why plaintiff refused. As plaintiff participated in the other tests Dr. Hoang
20 administered, it is reasonable to surmise that he declined to undertake the lumbar spine and
21 shoulder range of motion tests due to excessive pain. Accordingly, the ALJ needs to make clear
22 how plaintiff's refusal is convincing evidence that his subjective complaints are implausible.

23       Finally, while Dr. Hoang's ultimate opinion that plaintiff can perform medium work may
24 indicate that plaintiff's allegations are less severe than he claims, the ALJ is obligated to make
25 explicit findings by specifically identifying which claims are not credible. See Lester, 81 F.3d at
26 834. The ALJ only addressed plaintiff's complaints of "severe, unremitting pain," and failed to
27 consider the other subjective complaints concerning extreme fatigue, leg cramping, shortness of
28 breath, and blurred vision. [See AR at 17.] Because these symptoms, if accepted, could pose

serious limitations in the workplace, it was error for the ALJ to implicitly reject them without offering specific reasons substantiated by the record.  See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999) ("The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.").  The ALJ's reliance on Dr. Hoang's opinion that plaintiff can do medium work is therefore not by itself a sufficiently clear and convincing reason to reject credibility, as the ALJ failed to show how the doctor's opinion undermined plaintiff's other alleged symptoms and limitations as well.

The ALJ also premised his rejection of plaintiff's credibility on the fact that "based on the totality of the medical evidence, there was no abnormality resulting from his alleged impairments" and concluded that "it is evident that [plaintiff's] impairments cause no functional limitation." [AR at 17.] In addition, the ALJ articulated that the record "fails to indicate significant problems with [plaintiff's] alleged symptoms." [Id.]  The Court finds these reasons too general and conclusory to support a rejection of plaintiff's complaints.  As explained above, the ALJ needed to clearly identify what portions of plaintiff's testimony were rejected, along with the specific evidence that negates the alleged severity of the complaints.  Reddick, 157 F.3d at 722.

For the foregoing reasons, remand is warranted, and the ALJ is directed to reevaluate plaintiff's credibility and assess his symptom allegations.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to further assess plaintiff's credibility.[5]

---

[5] In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.

1    Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;
2  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant
3  for further proceedings consistent with this Memorandum Opinion.

5  DATED: February 27, 2006                                /S/
                                                       PAUL L. ABRAMS
6                                              UNITED STATES MAGISTRATE JUDGE